MATTER OF NAVARRETE

In Exclusion Proceedings

A-14538960-1

*Decided by Board February 21, 1967*

With regard to citizenship retention, where an individual's constructive physical
presence in the United States has already been found for a specific period
for one purpose, its existence during that same period should not be over-
looked or ignored for a related purpose; hence, where, for the purposes of
citizenship retention under section 301(b) of the Immigration and Nation-
ality Act, as amended, a finding has already been made of the constructive
continuous physical presence of applicants' mother in the United States for
the necessary period (more than one year), which period was prior to the
birth out of wedlock of applicants in Mexico in 1960 and 1962, such construc-
tive physical presence satisfies the continuous physical presence requirement of
section 309(c) of the Act for the purposes of citizenship acquisition at birth
by applicants.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Im-
migrants not in possession of immigrant visas.

ON BEHALF OF APPLICANTS: Everett W. Moss, Esquire
106 S. Campbell Street
El Paso, Texas  79901

This case comes forward on certification from the special inquiry
officer, who found the applicants to be citizens of the United States
and ordered that they be admitted to the United States.

In this case there is no conflict or dispute on the facts. It concerns
a boy and a girl born in Ojinaga, Chihuahua, Mexico, on August 11,
1960 and January 31, 1962, respectively. Their mother, Carmen Navar-
rete Patino, was also born in Ojinaga, on April 23, 1935; in previous
proceedings, she was found to have been a United States citizen at
birth abroad and to have retained that citizenship.

The record shows that the applicants' mother was married to
one Catarino Patino-Renteria, allegedly a United States citizen, on
April 5, 1955 in Mexico; that marriage has never been terminated.
However, applicants' mother testified under oath that she has never
lived with Patino-Renteria after 1956 and that he definitely is not the

father of these two children. The record does not show the identity of their father and they must, therefore, be considered as children born out of wedlock.

This is the first application of these children for admission to the United States, so that their claim to citizenship cannot rest on naturalization. It must depend on whether they became citizens at birth abroad under the provisions of section 309(c) of the Immigration and Nationality Act of 1952, the law in effect at the time of their birth. That section provides:

"* * * a person born, on or after the effective date of this Act, outside the United States and out of wedlock shall be held to have acquired at birth the Nationality status of his mother, if the mother had the nationality of the United States at the time of such person's birth, and *if the mother had previously been physically present in the United States or one of its outlying possessions for a continuous* period of one year." (Emphasis supplied.)

The applicants' mother, who first entered the United States (as a citizen) in August or September of 1948, and was in this country, either every weekday as a day worker or for continuous periods of three to four months at a time, for a total of almost five of the next six years, cannot show an uninterrupted period of continuous physical presence of a full year's duration prior to the birth of these children. It is her claim that she was coming to the United States with the purpose and intention of residing here permanently, at the time in September 1954 when she was refused admission and had her United States citizen's identification card taken from her and endorsed with: "erroneously issued—expatriated 4/22/51."

The mother's own acquisition and retention of citizenship must be considered in arriving at a conclusion in this case. Carmen Navarrete Patino became a citizen at birth in Mexico on April 22, 1935 under the provisions of R.S. 1993, as amended by the Act of May 24, 1934. She was the daughter of an alien mother, and a native-born United States citizen father who had resided in the United States prior to her birth. It was provided in R.S. 1993 that this right of citizenship would not descend unless she came to the United States and resided here for at least five years continuously immediately previous to her eighteenth birthday. In October 1940, R.S. 1993 was repealed by the Nationality Act of 1940. Section 201(g) of the 1940 Act, relating to acquisition of citizenship by a child born abroad to one citizen and one alien parent, provided that in order to retain such citizenship, the child must reside in the United States for a period or periods totalling five years, between the ages of thirteen and twenty-one years. Section 201(h) stated:

139

"The foregoing provisions of subsection (g) concerning retention of citizenship shall apply to a child born abroad subsequent to May 24, 1934."

Applicants' mother began coming to the United States regularly shortly after her thirteenth birthday and spending most of her time here, but she did not contend then, and does not now, that she resided here. Her sojourns were temporary, whether for work or a visit with here relatives, but in her own mind her home and residence remained in Mexico. She reached her 16th birthday on April 22, 1951, without having begun to reside in the United States. Under the terms of section 201(g):

"* * * if the child has not taken up a residence in the United States or its outlying possessions by the time he reaches the age of 16 years * * * his American citizenship shall thereupon cease."

The mother nevertheless continued to come and go freely as a United States citizen subsequent to April 22, 1951.

The law was changed again on June 27, 1952, by the signing of the Immigration and Nationality Act of 1952, which took effect on December 24, 1952. Section 301(b) covers the requirements for retention of citizenship by one who acquired it by birth abroad to one citizen and one alien parent. It provides that such a person shall lose his nationality and citizenship unless he completes five years of continuous physical presence in the United States at any time following attainment of the age of 14 and before the age of twenty-eight years (by the Act of September 11, 1957, this section was amended to permit physical presence to be considered continuous if absences from the United States during the five-year period were less than 12 months in the aggregate). Section 301(c) specified that subsection (b) was to apply to persons born abroad subsequent to May 24, 1934. However, section 405(c) of the Act provided:

"Except as otherwise specifically provided in this Act, the repeal of any statute by this Act shall not terminate nationality heretofore lawfully acquired nor restore nationality heretofore lost under any law of the United States or any treaty to which the United States may have been a party."

This section was interpreted to prevent any finding of citizenship for a person born abroad subsequent to May 24, 1934 who had reached his or her sixteenth birthday before December 24, 1952 without having taken up residence in the United States, upon the basis that such a person had already lost citizenship under the provisions of section 201(g) of the 1940 Act (cf. *Matter of B—*, 5 I. & N. Dec. 291). It was under this interpretation that the applicants' mother, after at least six entries as a citizen in 1953 and 1954, was prevented from entering in September 1954 upon the ground that she was no longer a citizen. It is her uncontradicted testimony that she made several efforts to have her

status reconsidered, that each time she was told to go to the American Consulate in Juarez, Mexico to have her status ruled upon there but that she did not take the trip because she could not afford the cost of it.

In 1957, through admission of error by the Government before the Supreme Court, in the case of *Lee You Fee* v. *Dulles*, 355 U.S. 61, the provisions of section 301(c) were held to be a specific exception to section 405(c), and the citizenship retention provisions in the 1952 Act, making the cutoff age for coming to the United States 23 instead of 16, were held to be applicable to all persons born abroad subsequent to May 24, 1934, even if they had reached age 16 before December 24, 1952, without coming to the United States. (Cf. *Matter of M—*, 7 I. & N. Dec. 646.)

The applicants' mother next applied for admission to the United States, as a citizen, on July 1, 1963, and was detained for an exclusion hearing. In the decision following that hearing, the special inquiry officer, relying upon the above rationale, found her to be a citizen and admissible, even though she had not complied with the residence requirements of the 1952 Act, since she was prevented from complying by no lack of diligence on her part, but by an erroneous interpretation of her citizenship status by a United States official (citing *Matter of S—*, 8 I. & N. Dec. 221). By the time the decision was made that she was still a citizen (April 13, 1964) she was within nine days of her 29th birthday, and even partial compliance was no longer in her power. The special inquiry officer therefore held, in the instant case, that she was to be regarded as having been constructively physically present in the United States for the necessary period. (Cf. *Matter of Farley*, Int. Dec. No. 1432, decided February 19, 1965.) In the instant case, in view of her many trips to the United States, between 1948, when she was just 13, and 1954, when she was erroneously excluded, there was partial compliance by applicants' mother, and the constructive physical presence is required only for the portion of the five-year period which she did not complete (*Matter of Farley*, *supra*). While the file does not contain information specific enough to permit a determination of exactly how much time was lacking, it appears that it was certainly more than one year, in view of the fact that the actual physical presence was started when she was under 14, and was constantly interrupted by sojourns in Mexico ranging from overnight, to a weekend, to (in one instance, between August, 1950 and February, 1951) as much as six months.

The question before us is whether the constructive presence of the applicants' mother in the United States, for the necessary period of more than one year, can be counted as the continuous year of physical presence in the United States before the children's birth, which is

141

required before citizenship can pass to them at birth under the provisions of section 309(c). We believe that it can, and that the special inquiry officer was correct in finding that both children had acquired citizenship at their birth.

Constructive residence and physical presence are concepts which are not strangers to the field of immigration and nationality law. They normally come into play in situations where actual residence or physical presence were prevented by circumstances beyond the individual's control, or by reliance upon erroneous information received from a United States official. In such cases it is not equitable to penalize individuals for factors they could not control or circumstances they did not create. (Cf. *Matter of Farley, supra.*)

Here, the applicants' mother was prevented, in September 1954, from coming to the United States to reside permanently, by a United States official acting under an interpretation of the law later conceded by the Government to be erroneous. Had she then been admitted, she could (and claims she would) have completed the period of physical presence necessary to insure retention of her United States citizenship. The same period of physical presence would have qualified her to pass on citizenship at birth to these applicants.

With regard to citizenship retention, the special inquiry officer has held not that the circumstances waived the necessity for physical presence, but rather that they justify a finding that the applicants' mother was constructively physically present in the United States for the required period. We hold, with him, that where constructive physical presence has already been found for a specified period for one purpose, its existence during that same period should not be overlooked or ignored for a related purpose. We find that the applicants' mother has had sufficient physical presence in the United States to comply with section 309(c) of the Immigration and Nationality Act. The special inquiry officer's order will be affirmed.

**ORDER:** It is ordered that the decision of the special inquiry officer be and the same is hereby affirmed.

142