PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 06 2001
THOMAS K. KAHN
CLERK

No. 00-11616

D.C. Docket No. 99-00300-CV-SH

RAIMOND N. TULLIUS,

Plaintiff-Appellant,

versus

MADELEINE ALBRIGHT,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

**(February 6, 2001)**

Before ANDERSON, Chief Judge, CARNES, Circuit Judge, and NANGLE*, District Judge.

NANGLE, District Judge:

---

*Honorable John F. Nangle, U.S. District Judge for the Eastern District of Missouri, sitting by designation.

Raimond N. Tullius appeals from the final judgment entered in the District Court for the Southern District of Florida, granting summary judgment in favor of the defendant. In granting the motion for summary judgment, the district court found that the doctrine of constructive physical presence does not apply to the physical presence requirement for transmission of United States citizenship under 8 U.S.C. § 1401(a)(7) (1973). See R:37 at 1; R:35 at 2. Appellant contends that this finding was error. We affirm the district court's grant of summary judgment in favor of the defendant/appellee.

## I. Background

On February 1, 1999, appellant filed an action for declaratory judgment of United States citizenship under 8 U.S.C. § 1503(a). Appellant contends that his father was a United States citizen at the time of appellant's birth and transmitted that citizenship to appellant at birth, under 8 U.S.C. § 1401(a)(7) (1973) (presently codified as amended at 8 U.S.C. § 1401(g)).

Appellant's grandmother, Barbara Lukas, was born on October 18, 1915 in Cincinnati, Ohio, but subsequently moved to Romania at the age of five. Appellant's father, Nikolaus Tullius ("Nick"), was born in Romania on October 23, 1935. Nick acquired United States citizenship at birth as a result of his mother's United States citizenship. In January 1945, when Nick was nine years old, his mother Barbara was

2

deported to a Soviet forced-labor camp, where she died the same year. Due to travel restrictions imposed by the Romanian government, appellant's father Nick was unable to leave Romania until 1961, when he renounced his Romanian citizenship and emigrated to Canada. Nick became a naturalized citizen of Canada on April 13, 1966. Appellant Raimond ("Ray") was born in Canada on October 5, 1973.

In August 1997, appellant's father Nick learned for the first time of his mother's United States citizenship and his own potential claim for United States citizenship. Consequently, Nick submitted an application for a United States passport in December 1997. On April 17, 1998, Nick's application for citizenship was approved, but only after Nick executed an oath pursuant to Section 324(d)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1435(d)(1). The oath signed by Nick states that it is "for use under Section 324(d)(1) of the Immigration and Nationality Act by a person who was a citizen of the United States at birth and lost such citizenship for failure to meet the physical presence retention requirements under Section 301(b)INA." R:20 at Ex. B. Nick's oath contained the following statements:

> I solemnly swear that I have performed no voluntary act
> which would cause me to be within any of the provisions of
> Section 313 of the Immigration and Nationality Act relating
> to persons opposed to government or law or who favor

3

totalitarian forms of government. I hereby take the Oath of Allegiance to the United States as prescribed by Section 337(a) of the same act. <u>I understand that taking the oath restores U.S. citizenship as of the date of the oath and is not retroactive to the date of failure to retain.</u>

<u>Id</u>. (emphasis added). Nick's United States citizenship was then reinstated, and he was awarded a passport as a United States citizen born abroad to a United States parent. R:3 at 4-5.

On September 24, 1998, appellant Ray, a tax attorney in Miami, applied for a United States passport. His application was denied on January 4, 1999, and appellant then filed this declaratory judgment action on February 1, 1999. R:1 at 1-2. On December 17, 1999, the appellee filed a motion for summary judgment, arguing that appellant's father did not transmit citizenship to appellant at birth because his father's citizenship had lapsed for lack of physical presence in the United States during the period of time required under 8 U.S.C. § 1401(b) (1952). R:20 at 6. On January 10, 2000, appellant filed a cross-motion for summary judgment, arguing that he is entitled to United States citizenship because his father satisfied both the citizenship retention requirement and the citizenship transmission requirement under the constructive

4

physical presence doctrine. R:24 at 5-9. The district court granted the appellee's motion for summary judgment and denied appellant's cross motion. R:37 at 1-2; R:35 at 2.

## II. Standard of Review

We review the district court's grant of summary judgment *de novo*, reviewing all facts and reasonable inferences in the light most favorable to the nonmoving party, and applying the same standard as the district court. Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998); Hale v. Tallapoosa County, 50 F.3d 1579, 1581 (11th Cir. 1995). A grant of summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Clemons v. Dougherty County, 684 F.2d 1365, 1369 (11th Cir. 1982).

## III. Analysis

Appellant claims that his father, who was a United States citizen at birth, transmitted citizenship to appellant under the doctrine of constructive physical presence. Specifically, appellant argues that the doctrine should apply to transmission

5

cases when the citizen is prevented from satisfying the physical presence requirement due to circumstances beyond his control. This Court disagrees and adopts the reasoning of the Second Circuit set forth in Drozd v. I.N.S., 155 F.3d 81, 85-88 (2d Cir. 1998) (holding that the doctrine of constructive physical presence does not apply to the physical presence requirement for transmission of citizenship under 8 U.S.C. § 1401(a)(7)).

In order to determine appellant's citizenship status, the Court must look to the applicable law in effect at the time of appellant's birth. Runnett v. Shultz, 901 F.2d 782, 783 (9th Cir. 1990) (holding that "[t]he applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth"). In 1973, when appellant was born, Section 301(a) of the 1952 Immigration and Nationality Act, 8 U.S.C. § 1401(a) provided:

(a) The following shall be nationals and citizens of the United States at birth:

(7) a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years.

6

8 U.S.C. § 1401(a)(7) (1973).[1]

The facts establish that appellant's father did not satisfy the physical presence requirement set forth in 8 U.S.C. § 1401(a)(7). The parties agree that Nick was not factually physically present in the United States during the time period required by the statute. Appellant argues, however, that even though his father was not physically present in the United States during the requisite period, the doctrine of constructive physical presence should apply in this case and should permit the transmission of citizenship from appellant's father to appellant. This Court agrees with the Second Circuit, however, which found that the plain meaning of 8 U.S.C. § 1401(a)(7) prevents this interpretation. See Drozd, 155 F.3d at 86-87; see also Runnett v. Schultz, 901 F.2d 782, 784 (9th Cir. 1989) (discussing the policy distinctions between citizenship retention cases and citizenship transmission cases).

In Drozd, the Second Circuit focused on the statutory language of 8 U.S.C. § 1401(a)(7) and discussed the two specific exceptions provided in the statute. Drozd, 155 F.3d at 86. One specific exception to the physical presence requirement in the statute was for "any periods of honorable service in the Armed Forces of the United States . . . ." Id.; see also 8 U.S.C. § 1401(a)(7) (now codified at 8 U.S.C. § 1401(g)).

---

[1] In 1986, Congress amended the statute, replacing the phrase "ten years, at least five" with "five years, at least two." Pub. L. No. 99-653, § 12, 100 Stat. 3655 (1986), now codified at 8 U.S.C. § 1401(g). Even with this modification, appellant's father still failed to satisfy the physical presence requirement for transmission of citizenship under 8 U.S.C. § 1401(a)(7) (1973).

In 1966, Congress amended the 1952 Immigration and Nationality Act and added another exception to the physical presence requirement, allowing an exception for "periods of employment with the United States Government . . . ." 8 U.S.C. § 1401(a)(7); Act of Nov. 6, 1966, Pub. L. No. 89-770, 80 Stat. 1322.

As found by the Second Circuit in Drozd, the existence of these two articulated exceptions to the physical presence requirements undermines appellant's argument that this Court should add a third "circumstances beyond control" exception. See Drozd, 155 F.3d at 86. Although the Court is sympathetic to appellant's plight, as well as to his family history, this new exception "cannot be accommodated 'in the absence of evidence of a contrary legislative intent.'" Id. (quoting United States v. Smith, 499 U.S. 160, 167 (1991)).

The Second Circuit also noted that the 1952 Immigration and Nationality Act replaced the "residence" requirement, found in the earlier Nationality Act of 1940, with a requirement of "physical presence" for transmission of citizenship to a child born abroad. See Drozd, 155 F.3d at 87 (citing to the Nationality Act of 1940, ch. 876, § 201(g), 54 Stat. 1137, 1139). The change in language "compel[s] a strict adherence to the plain terms of the Act." Id. Finally, in the instant case as in Drozd, there is no allegation here that appellant's father was wrongfully or erroneously prevented by United States officials from entering the United States, as was the case

8

in <u>Matter of Navarrete</u>, 12 I. & N. Dec. 138, 142 (BIA 1967) (distinguished in <u>Drozd</u>, 155 F.3d at 88). Thus, it is appropriate for this Circuit to follow the statute's plain language, as well as the reasoning adopted by the Second Circuit, and affirm the district court's grant of summary judgment for the appellee.

## IV. Conclusion

Because the district court properly found that the doctrine of constructive physical presence does not apply to the physical presence requirement for transmission of United States citizenship under 8 U.S.C. § 1401(a)(7) (1973), we AFFIRM the grant of summary judgment in favor of the appellee.