**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1741
_____

JOZEF R. MADAR,
Appellant

v.

UNITED STATES CITIZENSHIP AND IMMIGRATION
SERVICES
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court Civil No. 2-07-cv-01254)
District Judge: Hon. David S. Cercone
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 18, 2019

Before: GREENAWAY, JR., SHWARTZ, and PORTER,
*Circuit Judges*.

(Opinion filed:  March 7, 2019)
_____

Mark A. Goldstein
Goldstein & Associates
1125 Penn Avenue
3rd Floor
Pittsburgh, PA 15222

*Counsel for Plaintiff-Appellant*

Laura S. Irwin
Office of United States Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

Joseph H. Hunt
William C. Peachey
Sairah G. Saeed
Gisela A. Westwater
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868
Ben Franklin Station
Washington, DC 20044

*Counsel for Defendant-Appellee*

————————————

OPINION OF THE COURT

————————————

PORTER, *Circuit Judge*.

Our immigration laws have long required foreign-born children of citizens to reside or be physically present in the United States for some amount of time to retain citizenship. In extraordinary cases, these retention requirements can be constructively satisfied if circumstances prevented the foreign-born individual from complying with the statute. But while equity may allow someone to retain citizenship, it has only supported transmitting that retained citizenship to a descendant in rare cases—typically, when a government error causes citizenship to lapse.

Here, we consider whether Jozef Madar is a citizen. Madar argues that he is because his father constructively satisfied the statutory requirements for retaining citizenship and transmitted this citizenship to Madar himself. Because Madar's father, even if he were a citizen, did not transmit citizenship under a constructive physical presence theory, we will affirm the District Court's judgment.

I

Madar was born in communist-ruled Czechoslovakia in 1964 and entered the United States in 1991. After overstaying his visa, he settled in the Pittsburgh area. He has litigated his legal status in the decades since his arrival. In this proceeding, Madar seeks a declaration that he is a United States citizen because his late father, Jozef Madar, Sr., was a citizen, and his father's citizenship transmitted to him. Untangling this citizenship question requires a brief journey through the Madar family tree.

Madar's paternal grandmother, Julianne Cikovsky, was born in 1906 in Youngstown, Ohio. As she entered her teenage years, she left the United States to settle in Czechoslovakia. She married there and gave birth to a son, Madar, Sr., in 1940. Madar, Sr. lived in Czechoslovakia—and after its dissolution, Slovakia—his entire life. Madar, Sr. never lived in the United States. In the 1960s, Madar, Sr. married a non-United States citizen in Czechoslovakia and had children. One child was the petitioner, Madar.

Madar, Sr. knew of his mother's American birth, but he did not know that this might entitle him to United States citizenship. Madar, Sr. learned of this possibility through his son's immigration proceedings in the 1990s. In one proceeding, Madar, Sr. swore in an affidavit that the political circumstances of post-war Czechoslovakia would have made compliance with retention requirements difficult, if not impossible. Madar, Sr. observed that he would have had to reside in the United States for at least some time, but the Czech communist government would have prevented that—either by proscribing his emigration outright or making it so costly as to be practically impossible.

Madar sought a declaration from the District Court that his father constructively retained United States citizenship and transmitted that citizenship to him, making Madar ineligible for removal. The District Court denied Madar's request. It held that even if Madar, Sr. had retained his citizenship under an equitable theory that excused his non-compliance with statutory physical presence requirements, Madar, Sr. did not transmit that citizenship to his son. This appeal followed.

II

The District Court had jurisdiction under 28 U.S.C. § 2241. We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). "[W]e review a district court's legal conclusions de novo." *United States v. Green*, 898 F.3d 315, 317 (3d Cir. 2018).

III

Madar argues that his father was a United States citizen (because his father retained his citizenship), so he is as well (because his father transmitted that retained citizenship). Madar grounds this claim on an administrative decision involving the constructive physical presence doctrine, *Matter of Navarrete*, 12 I. & N. Dec. 138 (BIA 1967). Madar contends that *Navarrete* remains good law and controls the transmission-of-citizenship question here. Madar also argues that the District Court treated him differently than the petitioner in *Navarrete*, violating his equal protection rights.

Madar can be a citizen only if his father was. But even assuming that Madar's father retained his citizenship, he did not transmit that citizenship to Madar for at least two reasons. First, the applicable immigration statutes contained limited exceptions to the law's physical presence requirements, and like all other courts of appeals to consider this issue, we decline to read broader equitable exceptions into the law. Second, *Navarrete* does not apply because no United States government error interrupted citizenship retention and transmission.

In determining whether Madar is a citizen, we look to the statute in effect at the time of Madar's birth. *Runnett v.*

5

*Shultz*, 901 F.2d 782, 783 (9th Cir. 1990) ("The applicable law for transmitting citizenship to a child born abroad when one parent is a U.S. citizen is the statute that was in effect at the time of the child's birth."). Madar was born in Czechoslovakia in 1964. Assuming that his father was a citizen at the time of Madar's birth, the Immigration and Nationality Act of 1952 controls Madar's citizenship status. That law provided that several categories of individuals "shall be nationals and citizens of the United States at birth," including:

> a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years: *Provided*, That any periods of honorable service in the Armed Forces of the United States by such citizen parent may be included in computing the physical presence requirements of this paragraph.

Immigration and Nationality Act of 1952, Pub. L. No. 82-414, tit. III, ch. 1, § 301(a)(7), 66 Stat. 235 (codified at 8 U.S.C. § 1401(a)(7), codified as amended at 8 U.S.C. § 1401(g)) (the "1952 Act"). By its plain terms, the 1952 Act imposed physical presence requirements, but provided an exception for members of the United States military. Congress later added a second exception for "periods of employment with the United States Government." *See* Act of Nov. 6, 1966, Pub. L. No. 89-770, 80 Stat. 1322 (codified at 8 U.S.C. § 1401(a)(7)).

In an earlier proceeding, Madar's father admitted that he failed to satisfy these physical presence requirements, as he lived in Czechoslovakia—and after its dissolution, Slovakia—his entire life. For Madar to have citizenship, we would have to determine that Madar's father was constructively present in the United States, retained his citizenship, and transmitted that citizenship to Madar. Other courts of appeals have uniformly rejected extending the constructive physical presence doctrine to transmission of citizenship, and the reasoning of those decisions is instructive here.

First, the plain meaning of the 1952 Act precludes Madar's transmittal argument. "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 175–76 (2009) (quoting *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004)). Under the interpretive canon *expressio unius est exclusio alterius*, we presume that "[t]he expression of one thing implies the exclusion of others." Antonin Scalia & Bryan A. Garner, *Reading Law* 107 (2012). The 1952 Act, as amended, identifies just two exceptions to the physical presence requirement: for service in the armed forces or government employment. "[T]he existence of these two articulated exceptions to the physical presence requirements undermines [the] argument that this Court should add a third 'circumstances beyond control' exception." *Tullius v. Albright*, 240 F.3d 1317, 1321 (11th Cir. 2001); *see also Drozd v. I.N.S.*, 155 F.3d 81, 86 (2d Cir. 1998) (noting that Congress "expressly specified certain exceptions from the physical presence requirement" and declining to read additional exceptions into the statute). Like all other circuits to address the issue, we decline to venture beyond the statutory text

7

to import Madar's proposed hardship exception.[1] Such an approach would cut against the statute's plain language, case law construing the statute, and basic interpretive principles.

In declining to extend the constructive physical presence doctrine, courts have noted that retention cases and transmission cases involve different interests. Because "courts have traditionally hesitated to find that Congress could take away citizenship without the citizen's consent," they may find "constructive residence in order to preserve an individual's retention of citizenship." *Runnett*, 901 F.2d at 784 (citing *Rogers v. Bellei*, 401 U.S. 815, 821–22 (1971)). But this concern does

---

[1] Madar tries to escape this plain statutory language by arguing that Congress has generally loosened statutory residency or physical presence requirements over the years, and that we should join this trend to decide the citizenship question in his favor. This evolving-standards argument fails as both an interpretive and historical matter. For starters, Madar concedes—as he must—that the 1952 Act applies. Later-enacted immigration statutes irrelevant to the transmission issue cannot disturb the clear language of the 1952 Act. And as an empirical matter, the history of the immigration laws hardly shows a linear trend toward liberalizing residency or physical presence requirements. In fact, the 1952 Act itself represented a tightening of requirements, as "Congress enacted the continuous-physical-presence requirement in 1952 in response to abuses of the more lenient 'residence' requirement." *I.N.S. v. Phinpathya*, 464 U.S. 183, 198 (1984) (Brennan, J., concurring). Besides undermining Madar's evolving-standards argument, this change in language further "compel[s] a strict adherence to the plain terms of the Act." *Drozd*, 155 F.3d at 87.

"not exist for the transmission of citizenship where citizenship is simply not being conferred." *Id.*

As for Madar's contention that *Navarrete* supports his transmission-of-citizenship argument, he ignores that the decision turned on a government error. In *Navarrete*, children born in Mexico claimed that their mother was a United States citizen, retained that citizenship through constructive physical presence in the United States, and transmitted that citizenship to them. 12 I. & N. Dec. at 142. The Board of Immigration Appeals agreed. *Id.* Although the mother did not actually fulfill the physical presence requirements of the 1952 Act, that was only because she "was prevented, in September 1954, from coming to the United States to reside permanently, by a United States official acting under an interpretation of the law later conceded by the Government to be erroneous." *Id.* Had the United States official not made this mistake, the mother could "have completed the period of physical presence necessary to insure retention of her United States citizenship," and that "period of physical presence would have qualified her to pass on citizenship at birth to" her children. *Id.*

Here, by contrast, the United States government made no mistake. Madar's father was unable to retain citizenship because the political leadership of Soviet-era Czechoslovakia allegedly would have thwarted any attempt to live in the United States. Madar does not point to any United States government misconduct that caused his father's citizenship to lapse, and courts have interpreted *Navarrete* to be limited to just that scenario. *See Tullius*, 240 F.3d at 1321; *Drozd*, 155 F.3d at 88; *Runnett*, 901 F.2d at 784 n.3. Thus, *Navarrete* does not apply here for the same reason it did not apply in *Tullius*, *Drozd*, or

*Runnett*: No government error prevented Madar's father from retaining citizenship.[2]

*Navarrete*'s inapplicability also forecloses Madar's equal protection argument. In short, Madar claims that because *Navarrete* applied the constructive physical presence doctrine to citizenship transmittal, but the District Court declined to do so here, the District Court violated his equal protection rights. *See* U.S. Const. amend XIV, § 1 ("No State shall … deny to any person within its jurisdiction the equal protection of the laws."). Madar appears to raise a class-of-one equal protection claim. We have explained that "[t]o state a claim under a class of one theory, 'a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment.'" *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 156 (3d Cir. 2018) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)).

Madar was not treated differently than anyone similarly situated. Unlike in *Navarrete*, no United States official made

---

[2] To be fair, *Navarrete* suggests in dicta that it could apply more broadly. *See* 12 I. & N. Dec. at 142 ("Constructive residence and physical presence … normally come into play in situations where actual residence or physical presence were prevented by circumstances beyond the individual's control, <u>or</u> by reliance upon erroneous information received from a United States official.") (emphasis added). Despite that disjunctive, *Navarrete*'s holding was based on a United States "official acting under an interpretation of the law later conceded by the Government to be erroneous." *Id.*

an error that prevented Madar or his father from obtaining citizenship. Thus, Madar's equal protection argument fails the first prong of this test.

* * * * *

The District Court properly determined that the constructive physical presence doctrine does not apply here to transmit United States citizenship under the 1952 Act. So we will affirm the District Court's denial of Madar's claim for declaratory relief under 28 U.S.C. § 2241.

11