Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/13/2020 08:11 AM CST

Bernard Schaeffer, appellant, v.
Scott Frakes et al., appellees.

___ N.W.2d ___

Filed August 21, 2020.    No. S-19-938.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.

2. **Motions to Dismiss: Pleadings.** To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts to state a claim to relief that is plausible on its face. In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim.

3. **Constitutional Law: Actions.** A civil remedy is provided under 42 U.S.C. § 1983 (2012) for deprivations of federally protected rights, statutory or constitutional, caused by persons acting under color of state law.

4. ____: ____. In order to assert a claim under 42 U.S.C. § 1983 (2012), the plaintiff must allege that he or she has been deprived of a federal constitutional right and that such deprivation was committed by a person acting under color of state law.

5. **Sentences.** The meaning of a sentence is, as a matter of law, determined by the contents of the sentence itself.

6. **Due Process.** A plaintiff asserting the inadequacy of procedural due process must first establish that the government deprived him or her of interests which constitute "liberty" or "property" within the meaning of the Due Process Clause.

7. **Due Process: Public Officers and Employees.** The due process protection in its substantive sense limits what the government may do in both its legislative and its executive capacities. But the criteria to identify

what is fatally arbitrary differ depending on whether it is legislation or a specific act of a government officer that is at issue.

8. ____: ____. The substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.

Appeal from the District Court for Lancaster County: Andrew R. Jacobsen, Judge. Affirmed.

Gerald L. Soucie for appellant.

Douglas J. Peterson, Attorney General, and James D. Smith for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Papik, J.

Bernard Schaeffer alleges in this action brought under 42 U.S.C. § 1983 (2012) that officials within the Nebraska Department of Correctional Services (DCS) violated his federal constitutional rights in the calculation of his parole eligibility date. The district court dismissed Schaeffer's complaint, finding that the U.S. Supreme Court's decision in *Wilkinson v. Dotson*, 544 U.S. 74, 78, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005), precluded him from bringing his complaint under § 1983 because he sought to challenge "'the fact or duration of his confinement.'" On Schaeffer's appeal of the district court's dismissal, we find that Schaeffer has failed to adequately allege that his federal constitutional rights were violated, as he must to proceed under § 1983, and thus affirm.

## BACKGROUND

*Schaeffer's Convictions.*

The following details are summarized from Schaeffer's complaint: On May 26, 1977, Schaeffer was arrested in Hall County, Nebraska, for first degree murder. He later pleaded guilty to first degree murder in the district court for Hall County. Schaeffer was still a juvenile when the murder was

committed. On September 30, he was sentenced to life imprisonment. This sentence was mandatory under then-existing Nebraska law.

On April 12, 1979, Schaeffer was sentenced on an assault conviction in the district court for Lancaster County. He was sentenced to a term of 1 to 2 years' imprisonment, which was to be served consecutively to any other sentences being served. DCS combined this sentence with his earlier life sentence into a single sentence of imprisonment for life plus 1 to 2 years.

On May 25, 1983, Schaeffer was sentenced on another assault conviction in the district court for Lancaster County. He was sentenced to a term of 12 to 40 years' imprisonment, which was to be served consecutively to any other sentences being served. DCS combined the sentence with his earlier sentences into a single sentence of imprisonment for life plus 13 to 42 years.

Schaeffer was not entitled to credit for time served from the date of his arrest in May 1977 because he received a life sentence. He was not entitled to credit for time served on either of his assault convictions because he was already serving a sentence at the time of those convictions. Because he was serving a combined sentence of imprisonment for life plus 13 to 42 years, he could not earn "good time" toward parole or discharge.

*Initial Postconviction Proceeding
and Resentencing.*

On April 4, 2013, Schaeffer filed a verified motion for postconviction relief in the district court for Hall County alleging that his life sentence was void or voidable under the 8th or 14th Amendments to the U.S. Constitution as a result of the U.S. Supreme Court decision in *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). On February 24, 2016, the district court for Hall County entered an order granting postconviction relief and vacating Schaeffer's life sentence.

After a sentencing hearing, the district court for Hall County resentenced Schaeffer on his first degree murder conviction on January 3, 2017. Schaeffer was sentenced to 70 to 90 years' imprisonment. The district court also stated that Schaeffer was entitled to credit for time served dating back to his May 26, 1977, arrest. The district court concluded this amounted to 14,472 days.

The district court provided a truth-in-sentencing advisement. The district court stated that on the new first degree murder sentence alone, Schaeffer would be parole eligible after 35 years, assuming maximum good time, and his mandatory discharge date would be after 45 years, again assuming maximum good time. The district court went on to say:

"However, considering the additional sentences to be served out of Lancaster County with aggregate sentences of 13 to 42 years, under current good-time law, you will be parole eligible after 41.5 years[,] assuming maximum good time, less credit for time served, and your mandatory discharge date would be after 66 years, again assuming maximum good time, less credit for time served."

Schaeffer filed a direct appeal, but later moved to dismiss it.

*Dispute Regarding Schaeffer's*
*Parole Eligibility Date.*

DCS determined that Schaeffer will not be eligible for parole until February 20, 2033. Schaeffer alleges that DCS applied 1975 Neb. Laws, L.B. 567, to calculate his parole eligibility date. L.B. 567 was the good time law in effect at the time of Schaeffer's convictions. Schaeffer asserts that DCS should have calculated his parole eligibility date by applying the good time law in effect at the time of his resentencing, which he claims is 2011 Neb. Laws, L.B. 191. See Neb. Rev. Stat. § 83-1,107 (Cum. Supp. 2018). Schaeffer also alleges that the parole eligibility date determined by DCS conflicts with the truth-in-sentencing advisement provided by the district court for Hall County.

Schaeffer filed another motion for postconviction relief in which he attempted to challenge DCS' determination of his parole eligibility date. The district court denied relief, explaining that Schaeffer had not shown that his sentence was unconstitutional, but had only challenged postsentencing actions by DCS.

Schaeffer also filed various grievances with DCS in which he alleged that it had not correctly calculated his parole eligibility date. DCS' responses to those grievances explained how DCS was calculating Schaeffer's parole eligibility date and maintained it was doing so correctly.

Schaeffer alleged that there are other individuals in the custody of DCS who also had life sentences vacated under *Miller, supra*, but have had their parole eligibility dates calculated differently. Schaeffer identified nine inmates who were sentenced to life without parole but also had other term of years sentences for which no presentencing credit was awarded. He alleged that after these inmates were resentenced, they, unlike him, received "day-for-day" good time credit to determine their parole eligibility date. According to Schaeffer, if he would have received the same "day-for-day" credit for good time, he would have been eligible for parole as of November 28, 2018.

*§ 1983 Action.*

Schaeffer made the foregoing allegations in a complaint filed against three DCS officials (collectively referred to as "DCS") in the district court for Lancaster County under § 1983. Schaeffer contended that by determining that his parole eligibility date was February 20, 2033, DCS violated his rights under various provisions of the U.S. Constitution. In particular, he alleged that DCS violated his right to be free from cruel and unusual punishment under the 8th Amendment, his right to due process of law under the 14th Amendment, and his right to equal protection under the 14th Amendment.

Schaeffer sought a declaration that DCS' determination of his parole eligibility date violated the provisions of the U.S.

Constitution described above and an order enjoining DCS from enforcing their determination of his parole eligibility date. He also sought attorney fees under 42 U.S.C. § 1988 (2012). Schaeffer did not seek a declaration of his parole eligibility date under state law.

DCS successfully moved to dismiss Schaeffer's complaint. The district court concluded that Schaeffer's action could not proceed under the U.S. Supreme Court's decision in *Wilkinson v. Dotson*, 544 U.S. 74, 78, 125 S. Ct. 1242, 161 L. Ed. 2d 253 (2005), which prohibits prisoners in state custody from using a § 1983 action to challenge "'the fact or duration of [their] confinement.'" The district court concluded that Schaeffer was attacking the duration of his confinement by seeking an earlier parole eligibility date.

Schaeffer appeals the dismissal of his § 1983 action.

## ASSIGNMENT OF ERROR

Schaeffer assigns that the district court erred by granting DCS' motion to dismiss.

## STANDARD OF REVIEW

[1,2] A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Salem Grain Co. v. Consolidated Grain & Barge Co.*, 297 Neb. 682, 900 N.W.2d 909 (2017). To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts to state a claim to relief that is plausible on its face. *Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017). In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim. *Id.*

ANALYSIS

*Exception to § 1983 for Suits Challenging
Fact or Duration of Confinement.*

[3,4] A civil remedy is provided under § 1983 for deprivations of federally protected rights, statutory or constitutional, caused by persons acting under color of state law. *Waldron v. Roark*, 292 Neb. 889, 874 N.W.2d 850 (2016). In order to assert a claim under § 1983, the plaintiff must allege that he or she has been deprived of a federal constitutional right and that such deprivation was committed by a person acting under color of state law. *Id.*

The district court found that Schaeffer's claims could not be brought under § 1983, not because he failed to plausibly allege that he had been deprived of a federal constitutional right, but because he asserted such claims in order to challenge the fact or duration of his confinement. The district court concluded that the U.S. Supreme Court's opinion in *Wilkinson, supra*, precluded claims that sought such relief from being asserted in a § 1983 action and thus dismissed Schaeffer's complaint.

The parties' initial briefs on appeal focused exclusively on whether Schaeffer sought to challenge the fact or duration of his confinement and thus whether the U.S. Supreme Court's opinion in *Wilkinson* precluded Schaeffer from seeking such relief under § 1983. Schaeffer argued that because he was not seeking immediate release from custody in this action, he was not challenging the fact or duration of his confinement and *Wilkinson* permitted him to pursue his claims under § 1983. The State argued that *Wilkinson* did not permit a challenge to the calculation of an inmate's parole eligibility date. After oral argument, we directed the parties to file supplemental briefs addressing whether Schaeffer adequately alleged a federal constitutional violation under any of the theories asserted in his complaint.

We determine that it is not necessary to decide whether Schaeffer's action is an impermissible challenge to the fact or duration of his confinement under *Wilkinson* because, even assuming it is not, his complaint did not adequately allege

any violations of his federal constitutional rights and thus the district court did not err by dismissing his complaint for failure to state a claim. Before explaining our reasoning for this conclusion, we pause briefly to reject the assertion made in Schaeffer's supplemental brief that we may not, under *Weber v. Gas 'N Shop*, 278 Neb. 49, 767 N.W.2d 746 (2009), consider whether he adequately alleged a violation of his constitutional rights in the absence of a cross-appeal from DCS.

Schaeffer invokes two propositions from *Weber*, but neither applies here. One is that an appellee's argument that a lower court's decision should be upheld on grounds specifically rejected below constitutes a request for affirmative relief, and the appellee must cross-appeal in order for that argument to be considered. That proposition has no application here because the district court did not specifically reject an argument that Schaeffer failed to adequately allege any federal constitutional violations; its order spoke only to its conclusion that Schaeffer was impermissibly challenging the fact or duration of his confinement under § 1983.

The other proposition Schaeffer invokes is that an appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. That also does not apply here. Whether Schaeffer stated a claim upon which relief can be granted under § 1983 is the issue presented on appeal, and the district court "passed upon" that issue. Although the district court did not dismiss Schaeffer's complaint by considering his alleged federal constitutional violations one by one, it did conclude that Schaeffer failed to state a claim upon which relief could be granted under § 1983. See *Gonzalez v. Union Pacific RR. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011) (considering alternative grounds for affirming dismissal of complaint for failure to state claim).

*Eighth Amendment.*

We begin our analysis of Schaeffer's individual alleged constitutional violations with his claim that DCS violated his Eighth Amendment right to be free from cruel and unusual

punishment when it determined that he would not be eligible for parole until February 20, 2033. In support of his argument that he has stated a plausible claim for relief under the Eighth Amendment, Schaeffer relies on *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). Schaeffer argues that *Miller* imposes an Eighth Amendment procedural requirement in cases in which a defendant was sentenced to life without parole for an offense committed before reaching 18 years of age. In those cases, he contends, *Miller* requires that the sentencing court determine the date at which the defendant will become eligible for parole. And because he understands the district court for Hall County to have determined that he would be eligible for parole on November 28, 2018, Schaeffer contends DCS has violated his Eighth Amendment rights by concluding otherwise.

[5] Schaeffer is essentially arguing that the sentencing court's truth-in-sentencing advisement must prevail over the terms of the pronounced sentence. This has been rejected as a matter of state law. We have held that the meaning of a sentence is, as a matter of law, determined by the contents of the sentence itself. *State v. Russell*, 291 Neb. 33, 863 N.W.2d 813 (2015). We have also held that the pronounced terms of imprisonment prevail over any conflicting truth-in-sentencing advisements. See *id.* We do not understand Schaeffer to challenge these principles of state law generally, but to argue that *Miller* requires that they not be followed in this unique context.

We do not, however, understand *Miller* to stand for the proposition Schaeffer argues. In *Miller*, petitioners committed homicide offenses when 14 years of age and received life without the possibility of parole sentences as mandated by state law. The petitioners challenged their life without the possibility of parole sentences as violating the Eighth Amendment.

The U.S. Supreme Court observed that petitioners' challenges implicated "precedent reflecting our concern with proportionate punishment." *Miller*, 567 U.S. at 470. The Court noted that both its decision in *Roper v. Simmons*, 543 U.S.

551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), holding that the Eighth Amendment did not permit capital punishment for an offense committed by a juvenile, and its decision in *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), holding that the same constitutional provision prohibited a life without parole sentence for a nonhomicide offense committed by a juvenile, recognized that juveniles were different than adults in various ways relevant to sentencing. In particular, the Court noted its prior conclusions that, compared to adults, juveniles were not as mature, they were more susceptible to negative outside influences, and their character traits were less fixed. Although it recognized that its decisions in *Roper* and *Graham* did not directly address a mandatory life without parole sentence for a homicide, it concluded that such a sentence nonetheless violated the "foundational principle" recognized in those cases: that "imposition of a State's most severe penalties on juvenile offenders cannot proceed as though they were not children." *Miller v. Alabama*, 567 U.S. 460, 474, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). Based on this reasoning, the Court held in *Miller* that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 567 U.S. at 479.

Schaeffer's Eighth Amendment claim is much different than the claims asserted by the petitioners in *Miller*. Unlike the petitioners in *Miller*, Schaeffer is not contending that his Eighth Amendment rights were violated because he was sentenced to a mandatory term of life without the possibility of parole. Schaeffer did successfully challenge his initial sentence for first degree murder on this basis, but he was resentenced and he does not allege that the district court did not follow *Miller* upon resentencing.

Rather than alleging that his *sentence* does not comply with the dictates of *Miller*, Schaeffer contends that *DCS* ran afoul of *Miller* when it calculated his parole eligibility date after resentencing. But contrary to Schaeffer's assertion otherwise,

we see nothing in *Miller* holding that the Eighth Amendment requires that sentencing courts select the specific date on which a juvenile offender will be eligible for parole or that a sentencing court's advisement to a defendant as to when he or she will be eligible for parole must be given controlling effect by executive officials. *Miller* held that mandatory life imprisonment without the possibility of parole *sentences* for juvenile offenders violate the Eighth Amendment; it does not speak to constitutional requirements regarding the calculation of a parole eligibility date.

Because the basis for his claim is not legally viable, we conclude Schaeffer has failed to state a plausible claim for relief under the Eighth Amendment.

*Due Process.*

Schaeffer also alleges that DCS violated his 14th Amendment right to due process of law when it determined that he would not be eligible for parole until February 20, 2033. We thus consider whether Schaeffer has stated a plausible due process claim.

The Due Process Clause of the federal Constitution has been interpreted to provide both procedural and substantive protections. See *Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017). In its procedural sense, it polices the procedures under which the government seeks to deprive individuals of life, liberty, or property. See *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998). In its substantive sense, it guards against the exercise of government power without adequate justification. See *id.*

[6] A plaintiff asserting the inadequacy of procedural due process must first establish that the government deprived him or her of interests which constitute "liberty" or "property" within the meaning of the Due Process Clause. *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010), *overruled on other grounds, Davis, supra*. If the plaintiff can establish the deprivation of such an interest, the next question is whether the procedures followed by the government were

constitutionally adequate. See *Swarthout v. Cooke*, 562 U.S. 216, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011).

In his supplemental brief, Schaeffer appears to argue that he has alleged a procedural due process violation. In that brief, he asserts that he is being deprived of a liberty interest and that the State was required to offer fair procedures to vindicate that interest. Schaeffer seems to argue that he has a liberty interest in having his parole date accurately calculated according to state law.

In *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S. Ct. 2100, 60 L. Ed. 2d 668 (1979), the U.S. Supreme Court rejected the argument that a liberty interest in parole arises whenever a state provides for the possibility of parole. The Court went on to hold, however, that state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause. The Court concluded that the mandatory language of a Nebraska statute setting forth the circumstances under which an inmate was entitled to parole created an "expectancy of release" and that this was a liberty interest entitled to due process protection. *Greenholtz*, 442 U.S. at 12. The U.S. Supreme Court applied *Greenholtz* to reach essentially the same conclusion regarding Montana's parole system in *Board of Pardons v. Allen*, 482 U.S. 369, 107 S. Ct. 2415, 96 L. Ed. 2d 303 (1987).

While *Greenholtz* involved mandatory language in the statute governing the circumstances in which an inmate was entitled to an order of parole, Schaeffer argues that there is similarly mandatory statutory language governing when an inmate is eligible for parole. Here, Schaeffer points us to § 83-1,107, as well as Neb. Rev. Stat. §§ 83-1,110 (Reissue 2016) and 83-1,111 (Cum. Supp. 2018), and contends these statutes frame the duty to calculate a prisoner's parole eligibility date in mandatory terms and thus must also create a liberty interest entitled to due process protection.

But even if we assume Schaeffer has demonstrated that Nebraska's parole eligibility statutes create a liberty interest entitled to due process protection, it does not follow that he

has stated a procedural due process claim. As noted above, even if a protected liberty or property interest is established, to prevail on a procedural due process claim, a plaintiff must also show that the procedures followed by the government relative to that interest were constitutionally inadequate. See, e.g., *Swarthout, supra*. As we will explain, Schaeffer has not alleged facts suggesting constitutionally inadequate procedures.

The U.S. Supreme Court has held that even when, as in *Greenholtz* and *Allen*, a state statute creates a liberty interest in parole, the procedures required are minimal. In *Greenholtz*, the Court held that the prisoner received adequate process because he was allowed the opportunity to be heard and was provided a statement of reasons why parole was denied. The Court held that "[t]he Constitution does not require more." *Id.*, 442 U.S. at 16.

More recently, in *Swarthout v. Cooke*, 562 U.S. 216, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011), the U.S. Supreme Court reaffirmed that the procedures required when a state creates a liberty interest in the parole context are limited. In *Swarthout*, the Court reversed decisions of the U.S. Court of Appeals for the Ninth Circuit holding that prisoners in California state custody were entitled to federal habeas relief because they were denied parole in violation of their right to due process. The Court began its analysis by observing that even if California had created a liberty interest in parole, *Greenholtz* required only that the prisoners be given an opportunity to be heard and a statement of the reasons why parole was denied. Because the prisoners in *Swarthout* received this amount of process, that "should have been the beginning and the end" of the inquiry into whether they received due process. 562 U.S. at 220. The Ninth Circuit erred, the Court explained, by going on to review whether the decision by California state officials to deny parole was correct. As the Court put it, "[b]ecause the only federal right at issue is procedural, the relevant inquiry is what process [the prisoners] received, not whether the state court decided the case correctly." *Id.*, 562 U.S. at 222.

When the reasoning of *Greenholtz* and *Swarthout* is applied to Schaeffer's allegations, it becomes apparent that he has not adequately alleged that he did not receive procedural due process. Schaeffer's complaint discloses that he had and took advantage of multiple opportunities to communicate with DCS as to his view of how his parole eligibility date ought to be calculated. It also discloses that DCS provided explanations for its contrary calculation of his parole eligibility date. Thus, even assuming that Schaeffer had a liberty interest concerning his parole eligibility date, his own complaint indicates that he was provided with the minimal process required.

It is not clear that Schaeffer is contending that he also stated a violation of substantive due process. His supplemental brief speaks only of fair procedures rather than the outcome of those procedures. Furthermore, we read the language in *Swarthout* that the "only federal right at issue is procedural" to, at the very least, cast doubt on whether there is a substantive due process right to a particular outcome in the parole context. 562 U.S. at 222. But even if we assume such a right exists, Schaeffer has not stated a plausible claim that his right to substantive due process was violated.

[7,8] The due process protection in its substantive sense limits what the government may do in both its legislative and its executive capacities. *Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017). But the criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a government officer that is at issue. *Id.* The substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense. *Id.* A litigant seeking to establish that a government action is arbitrary or conscience shocking in the constitutional sense faces a high bar. See, e.g., *Buckley v. Ray*, 848 F.3d 855 (8th Cir. 2017).

We do not believe Schaeffer has alleged any facts that meet the high bar of conscience-shocking government action. At bottom, Schaeffer's complaint in this action is that DCS

improperly calculated his parole eligibility date under state law. It is well accepted, however, that a mere violation of state law, without more, does not rise to the level of conscience shocking. See, e.g., *Draper v. City of Festus, Mo.*, 782 F.3d 948 (8th Cir. 2015); *Doe ex rel. Magee v. Covington County School Dist.*, 675 F.3d 849 (5th Cir. 2012); *J.R. v. Gloria*, 593 F.3d 73 (1st Cir. 2010).

*Equal Protection.*

This leaves only Schaeffer's claim that DCS has violated his right to equal protection under the 14th Amendment to the federal Constitution. In analyzing this claim, we must note at the outset that Schaeffer's claim is unlike most equal protection claims. In most equal protection claims, a plaintiff alleges that some state action unlawfully discriminates between *classes or groups* of people. So, to note just a few examples, a plaintiff might claim that the government is committing an equal protection violation by treating people below a certain age differently than those above a certain age, see, e.g., *State v. Hibler*, 302 Neb. 325, 923 N.W.2d 398 (2019); by treating males differently than females, see, e.g., *Friehe v. Schaad*, 249 Neb. 825, 545 N.W.2d 740 (1996); or by treating people with one color of skin differently than those with another, see, e.g., *Brown v. Board of Education*, 347 U.S. 483, 74 S. Ct. 686, 98 L. Ed. 373 (1954). Some courts have referred to such claims as a "traditional, class-based" equal protection claim. See, e.g., *Davis v. Prison Health Services.*, 679 F.3d 433, 442 (6th Cir. 2012). Accord *Flowers v. City of Minneapolis, Minn.*, 558 F.3d 794 (8th Cir. 2009).

Schaeffer, on the other hand, is not claiming that the government is unlawfully treating him differently than others based on his belonging to any group or because he shares some trait or characteristic held by others. He is instead alleging that in calculating his parole eligibility date, DCS is singling out him and him alone for unfair treatment, specifically by calculating his parole eligibility date differently than it has for other individuals in Nebraska who were ordered

to be resentenced based on *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). This, Schaeffer contends, is sufficient to proceed under a "class-of-one" equal protection theory as recognized by the U.S. Supreme Court in *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). Supplemental brief for appellant at 17.

In *Olech*, a property owner alleged that the municipality in which she lived conditioned connecting its water supply to her property on granting the municipality a 33-foot easement. The property owner alleged that the municipality had required only a 15-foot easement from other property owners. The property owner sued, alleging that the 33-foot easement demand was "'irrational and wholly arbitrary'" and "motivated by ill will" as a result of the property owner's previous filing of an unrelated, successful lawsuit against the municipality. *Id.*, 528 U.S. at 563. The case eventually reached the U.S. Supreme Court, which noted that it had in the past "recognized successful equal protection claims brought by a 'class-of-one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*, 528 U.S. at 564. The Court found that the complaint in *Olech* stated a claim for relief under this theory, concluding that it alleged that the municipality intentionally treated her differently than similarly situated property owners and that this difference in treatment was "'irrational and wholly arbitrary.'" *Id.*, 528 U.S. at 565. *Olech* thus recognizes that, at least in some circumstances, a plaintiff may pursue an equal protection claim without alleging mistreatment based on membership in a class or group. But see *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) (holding that class-of-one equal protection claim is not cognizable in context of public employment).

While post-*Olech* courts have reached somewhat different conclusions about what exactly a plaintiff must prove in order to prevail on a class-of-one theory, a subject we will return

to in a moment, there is a consensus that certain elements are required. There is widespread agreement that a class-of-one plaintiff must at least show (1) the defendant treated him or her differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. See, e.g., *Madar v. U.S. Citizenship and Immigration Services*, 918 F.3d 120 (3d Cir. 2019). See, also, *Zell v. Ricci*, 957 F.3d 1 (1st Cir. 2020); *Crain v. City of Selma*, 952 F.3d 634 (5th Cir. 2020); *Johnson v. Morales*, 946 F.3d 911 (6th Cir. 2020); *Mensie v. City of Little Rock*, 917 F.3d 685 (8th Cir. 2019); *King v. Rubenstein*, 825 F.3d 206 (4th Cir. 2016). We agree with these courts that, at the very least, *Olech* requires a class-of-one plaintiff to show these three elements. In doing so, we acknowledge that some have criticized a threshold similarly situated requirement in the context of traditional class-based equal protection claims. See *State v. Hibler*, 302 Neb. 325, 923 N.W.2d 398 (2019) (Stacy, J., concurring). In the class-of-one context, however, such a requirement appears to be mandated by *Olech*.

Before turning to Schaeffer's allegations, we must elaborate on one of the required elements in a class-of-one equal protection claim—the requirement that the alleged discriminatory treatment was done intentionally. To say that an act must have been done "intentionally" could mean different things. In some legal contexts, an act is intentional if it is done with volition or with awareness of consequences. See, e.g., Keith N. Hylton, *Intent in Tort Law*, 44 Val. U.L. Rev. 1217 (2010). In the equal protection context, however, intent has a different meaning. In *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979), the U.S. Supreme Court held in an equal protection case that discriminatory intent requires "more than intent as volition or intent as awareness of consequences. . . . It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."

A number of courts have concluded that a plaintiff proceeding under a class-of-one equal protection theory must also show intentional discrimination in the sense that concept was understood in *Feeney*. For example, in *SECSYS, LLC v. Vigil*, 666 F.3d 678 (10th Cir. 2012), then-Judge Gorsuch authored an opinion in a case before the U.S. Court of Appeals for the 10th Circuit, explaining that summary judgment was appropriate on the plaintiff's class-of-one claim because it could not prove that the defendants acted with discriminatory intent in the *Feeney* sense of that phrase. Other courts have also concluded that the *Feeney* definition of discriminatory intent applies in class-of-one claims. See, e.g., *Integrity Collision Center v. City of Fulshear*, 837 F.3d 581, 589 (5th Cir. 2016) (holding in class-of-one case that plaintiff must show discriminatory intent, i.e., that decision at issue was made "at least in part because of its discriminatory effect on [plaintiffs] rather than mere knowledge that adverse consequences will result"); *Tuffendsam v. Dearborn County Bd. of Health*, 385 F.3d 1124, 1127 (7th Cir. 2004) (citing *Feeney, supra*, and explaining that defendants must have intentionally treated plaintiff worse "in the sense of wanting her to be made worse off than others"); *Greco v. Senchak*, 25 F. Supp. 3d 512, 519 (M.D. Pa. 2014) (holding that in order for class-of-one plaintiff to prove intentional discrimination, it must be shown that "'the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects'"); *Pariseau v. City of Brockton*, 135 F. Supp. 2d 257 (D. Mass. 2001) (same).

We agree that to prove the intentional discrimination element of a class-of-one claim, a plaintiff must prove discriminatory intent in the same manner that it must be proved in traditional class-based claims, i.e., that the defendant selected or reaffirmed a particular course of action because of its adverse effect and not merely with knowledge that effect would occur. This, of course, requires a slight modification in class-of-one claims. Because such claims do not allege that the defendant took action because of the plaintiff's affiliation

with a particular class or group, the plaintiff must show that the defendant treated the plaintiff as it did because of who the plaintiff is. See *SECSYS, LLC, supra*; William D. Araiza, *Flunking the Class-of-One/Failing Equal Protection*, 55 Wm. & Mary L. Rev. 435, 455 (2013) ("[p]roperly harmonizing the '"because of", not merely "in spite of"' formula [in] class-of-one claims should therefore require that the official have singled out the plaintiff *because of who the plaintiff is*—that is, *because of her identity*") (emphasis omitted).

We reach this conclusion for multiple reasons. First, applying the same standard as used in traditional class-based equal protection claims is consistent with the U.S. Supreme Court's observation that the "class-of-one theory [is] not so much a departure from" as it is "an application of" traditional equal protection principles. *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 602, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008).

Further, this understanding of the intentional discrimination requirement prevents the class-of-one theory from making the reasonableness of nearly all governmental decisions at all levels potential matters of federal equal protection law. Ever since the U.S. Supreme Court decided *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000), many courts have expressed concerns about the potential scope of the class-of-one theory. As one court put it, "unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004). In a concurring opinion, Judge Posner of the U.S. Court of Appeals for the Seventh Circuit illustrated the concern regarding the scope of the class-of-one theory by asking whether it would require federal courts to review whether police officers acted rationally if they, as part of random enforcement efforts, ticketed one driver for speeding when another driver going slightly faster on the same spot of highway moments earlier was not

pulled over. See *Bell v. Duperrault*, 367 F.3d 703 (7th Cir. 2004) (Posner, J., concurring).

As explained in *SECSYS, LLC v. Vigil*, 666 F.3d 678 (10th Cir. 2012), however, a requirement that a class-of-one plaintiff show discriminatory intent addresses this concern. Referring to Judge Posner's highway speeders hypothetical, then-Judge Gorsuch explained that the requirement that the plaintiff prove the defendant took the action because it would have an adverse effect on the plaintiff forecloses any class-of-one claim because the hypothetical police officer is not ticketing the driver "*because of* who [the driver] is." *Id.*, 666 F.3d at 690 (emphasis in original).

We recognize that some courts have held that a successful class-of-one claim requires proof that the defendant was motivated by "animus" toward the plaintiff. See, e.g., *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000); *Patterson v. American Fork City*, 67 P.3d 466 (Utah 2003). See, also, 1 Ivan E. Bodensteiner & Rosalie Berger Levinson, State & Local Government Civil Rights Liability § 1:15 at 1-1124 n.116 (2020) (collecting cases). Others point out that a defendant could act with discriminatory intent without harboring a vindictive motive. See, e.g., *SECSYS, LLC, supra*. While it seems unquestionable that a plaintiff *could* establish discriminatory intent by proving that the defendant was motivated by animus toward the plaintiff, it is not necessary for us to decide in this case whether discriminatory intent *must* be shown by proof of animus because, as we will explain, Schaeffer's complaint fails to allege that DCS acted with any discriminatory intent.

Schaeffer's complaint does allege that DCS "intentionally" treated him differently than similarly situated inmates when it calculated his parole eligibility date. This conclusory assertion, however, is nothing more than a "threadbare recital[] of the elements of a cause of action," which is not entitled to be accepted as true for purposes of a motion to dismiss. See *Holloway v. State*, 293 Neb. 12, 27, 875 N.W.2d 435, 448 (2016).

Conclusory assertions aside, Schaeffer does not allege any-thing suggesting that DCS calculated his parole eligibility date with discriminatory intent. Schaeffer's complaint certainly alleges facts suggesting that DCS acted intentionally in the sense that its officials acted with volition and an awareness of consequences when it calculated Schaeffer's parole eligibil-ity date. There are no factual allegations, however, suggesting that DCS calculated Schaeffer's parole eligibility date as it did *because* doing so would be adverse to Schaeffer or *because* it wanted to single out Schaeffer for unequal treatment. No reason is offered, for example, for why DCS would alleg-edly treat Schaeffer differently than others similarly situated. Neither is anything alleged suggesting that DCS would have calculated the parole eligibility date differently if someone else were in Schaeffer's shoes. See, *SECSYS, LLC*, 666 F.3d at 690 (explaining that to prove discriminatory intent, plaintiff must show defendant took action at issue "*because of* who [plaintiff] is") (emphasis in original); William D. Araiza, *Flunking the Class-of-One/Failing Equal Protection*, 55 Wm. & Mary L. Rev. 435 (2013).

For some courts, the absence of any allegations in a com-plaint suggesting that the defendants acted with discriminatory intent would alone be enough to conclude that the plaintiff failed to state a claim on a class-of-one equal protection theory. See, e.g., *Greco v. Senchak*, 25 F. Supp. 3d 512 (M.D. Pa. 2014); *Pariseau v. City of Brockton*, 135 F. Supp. 2d 257 (D. Mass. 2001); *Patterson v. American Fork City, supra*; *Lakeside Builders, Inc. v. Planning Bd. of Town of Franklin*, 2002 WL 31655250 (D. Mass. Mar. 21, 2002). Not only, however, has Schaeffer failed to plead facts suggesting that the defendants acted with discriminatory intent, the facts he has pleaded sug-gest they did not. This will require some elaboration, which we provide below.

As part of his attempt to allege an equal protection viola-tion under a class-of-one theory, Schaeffer identifies nine other individuals he claims are similarly situated to him but who had their parole eligibility dates calculated differently.

Schaeffer alleges that the nine identified individuals are similarly situated because each of them, like him, received a life sentence from a Nebraska court which was later vacated under *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), and each of them, like him, also received a sentence for other crimes prior to being resentenced as required by *Miller*.

Upon closer scrutiny, however, it becomes clear that Schaeffer's circumstances are more similar to some of his proposed comparators than others. Schaeffer alleges that Douglas Mantich, Christopher Garza, Johnny Ray, Jason Golka, Rodney Stewart, and Brian D. Smith were sentenced for other crimes at the time they were sentenced to imprisonment for life. Schaeffer, on the other hand, received his term of years sentences for assault in other proceedings in another district court years after he received his life sentence. In addition to this difference, the term of years sentences of Golka, Smith, and Luigi Grayer were initially ordered to be served concurrently to their life sentences, while Schaeffer's were ordered to be served consecutively. Further, Schaeffer alleges that when both Stewart and Grayer were resentenced, the sentencing court ordered their new post-*Miller* sentence to run concurrently to their earlier term of years sentences, but he makes no such allegation about his own resentencing.

Schaeffer's circumstances more closely mirror two of his other proposed comparators, Ahmad Jackson and Justeen Williams. He alleges that they, like him, received a life sentence for a murder conviction and then later were convicted of other crimes and received term of years sentences that were ordered to be served consecutively to their life sentences. And, as it turns out, the two proposed comparators Schaeffer identifies as having their parole eligibility dates calculated under a good time law other than L.B. 191 are Jackson and Williams. Schaeffer alleges that DCS used 1997 Neb. Laws, L.B. 364, and 1992 Neb. Laws, L.B. 816, respectively, to calculate the parole eligibility dates of Jackson and Williams. According to Schaeffer's allegations, DCS used the good time law in effect

at the time of Jackson's subsequent term of years sentence in 2004, L.B. 364, to calculate his parole eligibility date, just as it used the good time law in effect at the time of Schaeffer's term of years sentences for assault, L.B. 567, to calculate his parole eligibility date. While Schaeffer alleges DCS used L.B. 816 to calculate Williams' parole eligibility date, his complaint fails to allege when Williams was sentenced for assault on a confined person.

DCS' use of good time laws other than L.B. 191 to calculate the parole eligibility dates of Schaeffer, Jackson, and Williams indicates that it is not using L.B. 567 to calculate Schaeffer's parole eligibility date because of who Schaeffer is or because it wishes to single him out for unequal treatment. Rather, it suggests that DCS believes that inmates like Schaeffer, Jackson, and Williams, who after receiving a life sentence received a term of years sentence ordered to be served consecutively to the life sentence, are to have their parole eligibility date calculated using the good time law in effect at the time of their term of years sentence.

Schaeffer, as we have noted, contends that DCS' understanding of how parole eligibility is to be calculated under state law is incorrect. But even if Schaeffer is right about that, it does not follow that he has alleged an equal protection violation. See *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S. Ct. 397, 88 L. Ed. 497 (1944) ("not every denial of a right conferred by state law involves a denial of the equal protection of the laws"). In fact, in this context, if DCS is acting pursuant to an understanding of what state law requires, even if mistaken, that undermines rather than supports the notion that it is acting with the requisite discriminatory intent. See *Hu v. City of New York*, 927 F.3d 81, 94 (2d Cir. 2019) (requiring plaintiff alleging class-of-one equal protection claim to "'exclude the possibility that the defendant acted on the basis of a mistake'"). Because we conclude that Schaeffer has not alleged facts suggesting that DCS acted with discriminatory intent, we find that he has failed to plead a plausible class-of-one equal protection claim.

Returning briefly to the subject of state law, we note in closing that we have not determined whether DCS has correctly calculated Schaeffer's parole eligibility date under state law. At oral argument, Schaeffer's counsel made clear that his complaint did not seek a determination as to the correct calculation of Schaeffer's parole eligibility date under state law. And we have been able to determine that Schaeffer has failed to adequately allege any federal constitutional claims without deciding that issue.

## CONCLUSION

Because we find that Schaeffer has failed to adequately allege that DCS violated his federal constitutional rights in any respect, we find that the district court did not err in dismissing his complaint for failure to state a claim and thus affirm.

Affirmed.

Freudenberg, J., not participating.